UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

MUTUAL MARINE OFFICE, INC., PACIFIC
MUTUAL MARINE OFFICE, INC. AND
MUTUAL MARINE OFFICE OF THE
MIDWEST, INC., on their own behalf and, as
attorneys in fact, on behalf of the insurance
companies for which they act as managers and
agents,

                              Petitioners,

- against -

INSURANCE CORPORATION OF
IRELAND,

                              Respondent.

<u>**OPINION AND ORDER**</u>

04 Civ. 8952 (PKL)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

**APPEARANCES**

DANIEL A. HARGRAVES, ESQ.
JAMES D. MCCONNELL, ESQ.
Hargraves McConnell & Costigan, P.C.
420 Lexington Avenue
New York, NY 10170

<u>Attorneys for Petitioners</u>

JOHN P. HIGGINS, ESQ.
D'Amato & Lynch
70 Pine Street
New York, NY 10270

<u>Attorneys for Respondent</u>

LEISURE, <u>District Judge</u>:

Plaintiffs Mutual Marine Office, Inc., Pacific Mutual Marine Office, Inc., and Mutual Marine Office of the Midwest, Inc., on their own behalf and on behalf of the insurance companies for which they act as managers and agents (collectively "MMO"), seek judicial relief related to their pending arbitration proceeding with defendant Insurance Corporation of Ireland, now known as Icarom PLC ("defendant" or "ICI").[1] MMO filed an arbitration demand against ICI in November 2003 pursuant to certain reinsurance contracts, and now petitions the Court for an order: (1) appointing an arbitrator from the list of American candidates offered by MMO; and (2) directing ICI to proceed with the arbitration following the appointment of the requested arbitrator. For the reasons set forth below, plaintiffs' petition is denied in its entirety.

## BACKGROUND

While it is clear that the present dispute concerns certain reinsurance agreements, regrettably, the parties have failed to provide the Court with any explanation of the nature of the relationship between MMO and ICI, including how it deteriorated to the point where MMO felt compelled to resort to arbitration. A review of the exhibits attached to MMO's moving papers, which include copies of MMO's Demand for Arbitration ("Arbitration Demand") (see Petition Pursuant To 9 U.S.C. § 5 ("Petition") Ex. A) and various reinsurance agreements (id. Ex. B, Enclosures 1, 3, 5; Declaration of James D. McConnell Jr., Esq., dated December 28, 2004, Exs. A-C), suggests that MMO serves as a reinsurer for several insurance companies, allowing insurers to spread the risk of loss for a share of the premium paid by the insured. According to MMO, it serves as "attorney in fact, agent, and manager" for (1) Utica Mutual Insurance Company; (2) Employers Mutual Casualty Company; (3) Merchants Mutual Insurance

---

[1] The original caption incorrectly identified defendant as Insurance Company of Ireland.

Company; (4) The Lumber Mutual Fire Insurance Company of Boston, Massachusetts; (5) The Mutual Fire, Marine, and Inland Insurance Company; (6) Arkwright Boston Insurance Company; (7) Arkwright Boston Manufacturers Mutual Insurance Company; and (8) New York Marine Insurance Company. (See Petition ¶ 8.) It appears from the reinsurance agreements that MMO served as a reinsurer for these eight insurers and that, in at least two instances, ICI assumed a percentage of MMO's reinsurance risk. (Id. Ex. B, Enclosure 1 at twelfth unnumbered page, Enclosure 3 at eleventh unnumbered page.) According to the Arbitration Demand, MMO asserts that it is entitled to certain "balances due" from ICI, which are presumably related to prior claims submitted by MMO arising under the reinsurance agreements. (Id. Ex. A.) MMO also seeks to compel ICI to post and maintain a Letter of Credit to serve as security for ICI's loss reserves. (Id.)

In its moving papers, MMO maintains that three types of reinsurance agreements, numbering seventeen in total, properly apply to ICI, and that the arbitration provisions in each, which are apparently identical, obligate ICI to arbitrate.[2] (See MMO Mem. at 3.) However, MMO has only submitted to the Court copies of two reinsurance agreements that appear to have been signed on behalf of ICI. (See Petition Ex. B, Enclosures 1, 3.) Notably, ICI concedes that it is bound to arbitrate under those two agreements. (See Memorandum Of Respondent Icarom PLC (Formerly Known As The Insurance Corporation of Ireland) In Opposition to Petition Pursuant To 9 U.S.C. § 5 ("ICI Mem.") at 3.)

---

[2] In the Arbitration Demand, MMO contended that five types of reinsurance agreements applied to ICI. In its moving papers, it acknowledges that one type was included in the Arbitration Demand in error and includes a chart delineating the remaining four types. (See Memorandum In Support Of Petition Pursuant to 9 U.S.C. § 5 ("MMO Mem.") at 3, n.1.) However, in its reply papers, MMO combines two of the four remaining types and argues that there are only three agreements at issue. (See Reply Memorandum In Further Support Of Petition Pursuant to 9 U.S.C. § 5 ("MMO Rep.") at 5.) Unfortunately for the Court, MMO's cavalier approach to this issue is characteristic of the deficient nature of its petition as a whole.

The arbitration provision at issue, which, as noted above, is apparently identical in all of the agreements MMO referenced, provides that each party shall choose an arbitrator and the third arbitrator shall be selected by the two chosen arbitrators. By its Arbitration Demand, MMO appointed Thomas M. Tobin as its arbitrator. (See Petition at 6.) In response, ICI appointed Andrew Higgs as its arbitrator. (Id.) During a telephone call on September 12, 2004, the two chosen arbitrators presented lists to each other of preferred candidates to serve as the third arbitrator. (Id.) Mr. Tobin, on behalf of MMO, provided a list comprised of three candidates from the United States, while Mr. Higgs, on behalf of ICI, provided a list comprised of three candidates from the United Kingdom. (Id.) In a subsequent letter, MMO informed ICI that it considered ICI's attempt to nominate an arbitrator from the United Kingdom to be "contrary to the intent of the parties' agreements" because the agreements at issue provide that disputes should be governed by American law and resolved by American courts. (Id. Ex. F.) Thus, MMO asserted that it would file a motion to compel arbitration if ICI did not supply a list of "U.S. based" candidates the following week. (Id. at 7.) ICI did not provide such a list and MMO filed the instant action. (Id.)

## DISCUSSION

### I. Arbitration Is A Creature of Contract

MMO seeks an order (1) appointing an arbitrator from its list of American candidates and (2) directing ICI to proceed with the arbitration following the appointment of the arbitrator. A district court's authority to appoint an arbitrator and compel arbitration flows from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Although MMO only invokes Section 5 of the FAA in its petition, which addresses the appointment of arbitrators by the court, Section 4 also applies here because MMO requests an order compelling ICI to arbitrate. See 9 U.S.C. § 4 ("A

4

party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). Section 5 provides:

> If in the [arbitration] agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.

As the language of the FAA illustrates, courts must focus on the agreed upon terms of the arbitration provision when confronted with an arbitration related dispute. Indeed, this Court has previously stated, "it is fundamental that arbitration agreements are creatures of contract law." Energy Transp., Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186, 201 (S.D.N.Y. 2004) (Leisure, J.) (citation omitted); see also Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (affirming that "'arbitration is a matter of contract,' and therefore 'a party cannot be required to submit to arbitration any dispute which [it] has not so agreed to submit'") (quoting Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963, 967 (2d Cir. 1987)). While courts should be mindful that federal policy seeks to promote arbitration as an alternative means of dispute resolution, see JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004), the Second Circuit has cautioned that courts must not "overlook agreed-upon arbitral procedures in

deference to that policy." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 91 (2d Cir. 2005). Thus, "the federal policy is simply to ensure the enforceability, *according to their terms*, of private agreements to arbitrate." Volt Info. Sciences v. Bd. of Trustees, 489 U.S. 468, 476 (1989).

Moreover, as is always the case in matters involving contract interpretation, it is the parties' intentions that control. See id. at 202 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). The court is obliged to read the contract in a manner that confers full meaning and effect upon all of its provisions and renders the provisions consistent with one another. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995); Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124 (2d Cir. 2003) (quoting American Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (App. Div. 1990)). Furthermore, a court is not "free to alter the plain terms of an agreement or to strain language beyond its reasonable and ordinary meaning." Shaw, 322 F.3d at 124 (citing Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

**II.     The Plain Language of the Arbitration Provision Does Not Support MMO's Petition**

As noted above, MMO has submitted only two agreements that reference ICI as a party, the 1978 First Marine Excess of Loss Reinsurance Agreement (see Petition Ex. B, Enclosure 1), and the 1981 Marine Liability Excess of Loss Reinsurance Agreement (see id. at Enclosure 3), and ICI concedes that it is obligated to arbitrate with MMO under these two agreements. MMO also argues that ICI is compelled to arbitrate under fifteen other agreements but offers no proof that ICI is a party to any of them.[3] (See MMO Mem. at 3; MMO Rep. at 6.) Thus, on the

---

[3] The parties devote considerable attention to the number of agreements applicable to ICI. MMO claims that there are only three agreements at issue, each covering multiple years. (See MMO Rep. at 5.)    ICI, on the other hand, contends that there is a separate agreement for each

6

present record, the Court will only consider the two agreements that reference ICI because only they reflect the parties' shared intent to arbitrate. See Vera v. Saks & Co., 335 F.3d at 116.

The arbitration provision in each of the two agreements is identical. The provision reads in pertinent part:

> If any dispute shall arise between the REASSURED and the REINSUREDS with reference to the interpretation of this Agreement or their rights with respect to the transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it so do so, the requesting party may nominate two arbitrators who shall choose the third.

(Petition Ex. B, Enclosure 1 at 9; Enclosure 3 at 7.)

It should be clear at the outset that there is no language in the arbitration provision requiring the parties to nominate only American arbitrators or, as MMO requested, "U.S. based" arbitrators. Indeed, the arbitration provision does not contain any language that addresses the background or the qualifications of the arbitrators. Significantly, MMO expressly acknowledges this obvious and ultimately fatal flaw. (See MMO Rep. at 8 ("It is true, as far as it goes, that the subject arbitration clauses do not, in so many words, require appointment of a U.S. based Umpire.").) However, MMO insists that the appointment of an arbitrator from the United Kingdom would be contrary to the parties' intent because the reinsurance agreements are "U.S.

---

year, and therefore, there are seventeen agreements at issue. (See ICI Mem. at 3.) Because of MMO's admitted failure to maintain complete files of past contracts (see MMO Rep. at 3, 7), it is only able to offer two reinsurance agreements that reference ICI. It attempts to cure this glaring deficiency by submitting copies of agreements that make no mention of ICI and "cover notes," which describe particular reinsurance arrangements but are hardly a meaningful proxy for a binding contract. Nevertheless, MMO asks the Court to compel ICI to arbitrate under these fifteen other agreements even though MMO has failed to establish that some of them exist and for those that do exist, that ICI is a party. Suffice it to say, the Court is not persuaded by this presentation.

7

contracts" to be interpreted with reference to American law. (See MMO Mem. at 12.) MMO reasons that the agreements are particularly American because they (1) reinsure American insurance companies; (2) were negotiated by an American intermediary; (3) make reference to United States time and United States dollars; (4) require the reinsurers to submit to the jurisdiction of American courts; (5) provide for service of process in the United States; (6) contain American insolvency clauses; and (7) provide for arbitration in the United States. (Id. at 10-11.) Therefore, relying solely upon Cont'l Cas. Co. v. QBE Ins., No. 03 Cv 2222, 2003 WL 22295377 (N.D. Ill. Oct. 7, 2003), MMO concludes that the Court should appoint an American arbitrator because an English arbitrator would be more costly and less familiar with American arbitration procedures and American law. (Id. at 12.)

In essence, MMO asks the Court to ignore the plain language of the arbitration provision agreed to by the parties and follow the reasoning of a district court opinion from outside this Circuit that is based upon facts that are readily distinguishable from the instant case. Quite simply, "arbitration is a creature of contract," see Energy Transport, 348 F. Supp. 2d at 201, and MMO has made no plausible contention that the parties ever intended to limit their choice of arbitrators to those from the United States. The arbitration provision itself does not restrict in any way the type of arbitrator that the parties may nominate and MMO has not directed the Court to any other evidence suggesting that only U.S. based arbitrators are permissible. Failing to appreciate the Supreme Court's admonition that arbitration is "a matter of consent, not coercion," Volt, 489 U.S. at 479, MMO attempts to make an end-run around the express terms of the arbitration provision and subject ICI to a unilateral requirement of MMO's own construction.

In addition, MMO's reliance upon Cont'l Cas. Co. v. QBE Ins. is misplaced as the case actually highlights the particular importance of the language agreed upon by the parties. In

Cont'l Cas., an insurer sought to recover payment from a reinsurer through arbitration. 2003 WL 22295377, at *1. As is the case here, the two arbitrators selected by the parties could not agree on a third arbitrator. Id. The reinsurer contended that the third arbitrator should be from a neutral country as suggested by the rules of the United Nations Committee on International Trade Law and the American Arbitration Association. Id. The court rejected this argument because there was no indication, either in the form of a separate agreement or by incorporation into the arbitration provision, that the parties intended either set of rules to govern the instant dispute. Id. Ultimately, the court found that the most suitable arbitrator would be an American due, in large part, to the fact that the reinsurance agreement required the arbitrators to consider "the custom and practice of the applicable insurance and reinsurance business." Id. Plainly, this type of language is absent from the arbitration provision here. Therefore, far from supporting MMO's position that an American arbitrator should be appointed because these are "U.S. contracts," irrespective of the contracts' terms, Cont'l Cas. reinforces the notion that the intentions of the parties, as evidenced by the terms of the agreement, control in the arbitration context and must be adhered to by the parties and the court.

Accordingly, the Court rejects MMO's argument that the third member of the panel must be a "U.S. based" arbitrator because MMO has failed to produce any support for this contention. Moreover, MMO has advanced no other basis why the Court should appoint an arbitrator pursuant to 9 U.S.C. § 5. Therefore, the Court also rejects MMO's request to direct ICI to proceed with arbitration following the appointment of the requested arbitrator.

## CONCLUSION

Based on the foregoing reasons, MMO's petition is DENIED in its entirety with respect to the two agreements that reference ICI and with respect to the additional fifteen agreements alleged by MMO to the extent that the arbitration provisions in those agreements are identical to the provision addressed herein.

The Clerk of Court is directed to amend the original caption to conform to the caption on this Order.

**SO ORDERED.**

New York, New York
June 13, 2005

                                                                   _____
                                                                                        U.S.D.J.

Copies of this Opinion and Order have been sent to:

Daniel A. Hargraves, Esq.
Hargraves McConnell & Costigan, P.C.
420 Lexington Avenue
New York, NY 10170

John P. Higgins, Esq.
D'Amato & Lynch
70 Pine Street
New York, NY 10270

10